# CHARLESTON.

H. P. HAMMACK, *Admr.*, etc. v. HOPE NATURAL GAS COMPANY

(No. 5949)

Submitted October 11, 1927.   Decided October 25, 1927.

1. DEATH—*Father's Consent to Unlawful Employment of Infant Son in Dangerous Occupation Held to Bar Recovery for Son's Death (Barnes' Code 1923, c. 15H, §§ 72, 73).*

   The consent and acquiescence of a father, sole beneficiary, in the unlawful employment by another of his infant son in a gainful occupation, and one dangerous to the life and health of such infant. contrary to sections 72 and 73, chapter 15H, Barnes' Code 1923, will bar him from recovery of damages against the employer for the injuries and death of his son, the result of such unlawful employment.   (p. 346.)

   (Death, 17 C. J. § 95 [Anno] ; Parent and Child, 29 Cyc. p. 1640.)

2. MASTER AND SERVANT—*Directing Infant Common Laborer to Unload Gravel From Suitable Cars Held Not Shifting to More Dangerous Employment, Justifying Recovery for Death (Barnes' Code 1923, c. 15H, §§ 72, 73).*

   Where the contract of such infant was to perform, with others, common labor in and about the construction of a gas compressor station, and while so employed he is· directed to assist in unloading gravel from the cars of the railway company properly equipped with suitable appliances, the unloading of which is ordinarily performed by common laborers, such employment does not amount to a shifting of such infant from the kind of labor to which his father gave consent,

to a more dangerous work, so as to justify recovery for the injuries and death of the son due to his unlawful employ-ment.   (p. 348.)

(Death, 17 C. J.§ 95 [Anno] ; Parent and Child, 29 Cyc., p. 1641.)

3.   SAME—*Elevated Track, With Platform and Guard Rails Properly Equipped for Unloading Gravel, Held Reasonably Safe Working Place.*

An elevated track properly constructed with platform and guard rails on each side thereof, extending out from the ends of the ties, and designed to receive and unload cars of gravel and other materials, equipped with proper and necessary fix-tures and appliances therefor, satisfies the requirements of the law, that the employer use due care to provide his em-ployees with a reasonably safe place to work.   (p. 350.)

(Master and Servant, 39 C. J. § 1270.)

4.   SAME—*Whether Master Provided Minor Employee Suitable Tools for Unloading Gravel From Cars With Drop Bottom Doors Held for Jury.*

Where on the trial of such an action as is here being con-sidered, the evidence is conflicting as to whether the master provided his employees with suitable tools and implements necessary in safely unloading gravel from cars with drop bottom doors, the question of fact is properly submitted to the jury. (p. 352.)

(Master and Servant, 39 C. J. § 1326.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by H. P. Hammack, administrator of C. A. Ham-mack, deceased, against the Hope Natural Gas Company. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside;*
*new trial awarded.*

*Kemble White, Charles Powell, H. D. Rummell* and *A. F. McCue,* for plaintiff in error.
*Meldahl & Mauzy,* for defendant in error.

MILLER, JUDGE:

This is an action by plaintiff as administrator against the defendant for the alleged wrongful death of his deceased son,

C. A. Hammack, an infant under the age of 16 years, while employed by the defendant as a day laborer about the construction of a gas compressor station at Cornwell station near Clendenin in Kanawha County.

The defendant's plea was not guilty. On the trial the plaintiff obtained a verdict and judgment for $5,000.00 damages, which the defendant now seeks to have reversed upon writ of error thereto. The declaration contains five counts. The first two were predicated upon the alleged unlawful employment of the deceased in a gainful occupation in violation of Secs. 72 and 73, Chapter 15H, Barnes' Code 1923, without having complied with the requirements thereof, which, it is alleged, was the proximate cause of the death of said infant. The third, fourth and fifth counts are based upon the alleged failure of the defendant to perform certain common law obligations of master to servant, namely (1) to use due care to provide the servant with a reasonably safe place to work; (2) failure to promulgate proper rules and regulations for the government of its employees in the performance of their duties; 3) to provide its employees with proper and reasonably safe tools and appliances with which to perform their duties, and as a direct result of which breaches of duty the decedent was injured and killed.

On the trial it was admitted on behalf of the defendant that the employment of the deceased was an unlawful employment prohibited by the provisions of the statute. The principal defense relied upon, however, was that although the employment was unlawful, nevertheless the plaintiff, the father and the sole distributee of any recovery, had himself consented to and acquiesced in such unlawful employment and was thereby guilty of contributory negligence, precluding recovery.

On behalf of the plaintiff it was freely admitted, as established also by the evidence, that the father had in fact given his consent to such employment of his son to do the work of a common laborer in and about the construction of the defendant's plant; but that he had not consented to his employment at such a dangerous occupation as that of unloading carloads

of gravel and sand, in which he was engaged at the time when he sustained the injuries resulting in his death; wherefore he should not be prejudiced in his present action. The theory of the defendant is that the injuries complained of were the direct result of the unlawful employment, and the contributory negligence of plaintiff, and not the breach of any other duty covered by the last three counts.

The facts established by the admissions and the evidence are that young Hammack at the time of his employment on January 20, 1926, was a boy between 15 and 16 years of age, having been born on the 5th day of July, 1910; that he continued to work as such day laborer from the date of his employment until the first day of February, 1926, when he sustained the injuries, while assisting in unloading a carload of gravel, and from which he died a few days later; that he was a large boy, weighing about 160 to 165 pounds, and had represented to the defendant's timekeeper and agent that he was about 19 years of age; and that the defendant believed, though without lawful justification, that his employment was lawful and that it was protected by the Workmen's Compensation Law; that he lived with his father, the plaintiff, at Clendenin, in said county, within a short distance of the location of the defendant's plant, at Cornwell Station, on the Elk River and the Baltimore & Ohio Railroad; although perhaps with some reluctance, the plaintiff consented and acquiesced in his son's employment by the defendant company, certainly to do the work of a common laborer in and about the construction of said plant, he had not consented to or acquiesced in his employment at the dangerous work of unloading cars of material which he conceived was a more dangerous employment, and which was a more hazardous employment than a common laborer so employed should be required to do, thereby undertaking to distinguish between the kind of labor to which he gave his consent and that of unloading gravel and other material such as was required in the construction of said plant. The evidence shows that during the course of the construction of said plant, including the time between the employment and the death of decedent, some 125 carloads of material had been unloaded at said plant by

the laborers similarly employed, and with whom the deceased labored, without injuries or fatalities to any of them, so far as the record shows.

As already suggested, the defendant admits that the employment was unlawful, though in good faith, believing that the deceased was, as he represented, over 16 years of age; that such unlawful employment was the direct and proximate cause of the injuries and death of the deceased, but it defends on the ground that the plaintiff himself was guilty of contributory negligence in consenting to and acquiescing in such unlawful employment denying him as the sole distributee all right of recovery in this action.

On this state of the pleadings and proofs the first question we are called upon to decide is whether the employment of deceased by defendant, to which the plaintiff admits he gave his consent and acquiescence, did not include the work of unloading carloads of gravel, which was a more dangerous employment than that of a common laborer and that his employment at that work amounted to a shifting of the boy from the work for which he was employed to another and different character of work, more dangerous than that to which the plaintiff can be regarded as having given his consent, rendering the defendant liable upon the principles heretofore laid down and applied in *Wills* v. *Coal Company,* 97 W. Va. 476, 479, where the employee who was employed at a coal mine as a trapper was shifted to the work of operating a motor in the capacity of a snapper, a more dangerous and hazardous employment, and as illustrated also in the case of *Standard Red Cedar Chest Co.* v. *Monroe* (Va.), 99 S. E. 589, where the employee was shifted from the place of his employment at the rear end of a planer driven by steam power and electricity, where the work was less dangerous, to the front end of said machine, equipped as it was with wheels, cogs, pinions, circular knives, etc., without proper instructions in the operation thereof, as a result of which his fingers and hands were drawn into the machine and greatly injured. Of course a father, as these cases hold, could not be deemed to have consented to a more dangerous employment than that covered by his consent and acquiescence, and the defend-

ant thereby relieved from liability to him for such changed employment. But do the facts in this case bring it within the exception to the general rule relied on? We are disposed to hold that they do not. Did not the employment of the deceased as a common laborer fairly include the work of unloading cars as well as that of digging ditches, wheeling sand and gravel and other materials, and which as shown, was performed by other laborers employed in the same capacity and to which the plaintiff must be regarded as having given his consent? Though the work of unloading cars may have been somewhat more hazardous than some of the other work performed, yet who but common laborers could be expected to unload cars? Work of all kinds thus performed in conjunction with other laborers equipped with such implements are fraught with dangers, but these are regarded as assumed in accepting the employment. Of course such assumed risks do not include injuries resulting from the negligence of the employer to perform his common law obligations, sought to be covered in the third, fourth and fifth counts of the declaration, to be hereafter considered.

We are dealing now solely with the question of the alleged negligence of the defendant in putting the deceased to work in what we assume to have been a place more hazardous and not covered by the general employment. On this particular question the court at the request of the plaintiff and over the objection of the defendant gave to the jury the following instruction, which is made the basis of one of defendant's assignments of error, namely:

"The court instructs the jury that if you believe from all the evidence that after employing the plaintiff's intestate under sixteen years of age, in a gainful occupation at common labor, the defendant subsequently transferred and assigned him, without the father's consent, to assist in the unloading of a railroad car of gravel, and that the latter work was dangerous to the life or limb of decedent, and as a direct result of the said dangerous employment, the plaintiff's intestate received the injuries that resulted in his death, then you may find for the plaintiff."

It clearly appears from this instruction that the plaintiff thereby undertook to distinguish between common labor for which the deceased was employed with the consent and acquiescence of the plaintiff, and that of unloading freight cars, to one of which classes the plaintiff gave his consent and to the other of which he had not so consented. We are unable to appreciate this attempted distinction. We think that the employment of the deceased as a common laborer necessarily included the unloading of cars loaded with gravel, and that the instruction was erroneous in so instructing the jury, and for which error the judgment will have to be reversed. We think that common labor included the work of unloading gravel, delivered in such cars, and that the question under the pleading and evidence in this case was one of law for the court and not a fact for the jury.

As this error results in a reversal of the judgment, we might stop here; but for the purposes of another trial to be awarded we are called upon to respond to some of the other errors, relied upon, involved in the issues presented by the third, fourth and fifth counts. First, as to the alleged negligence of defendant to use due cars to provide the deceased with a reasonably safe place to work, we do no think that the place where the deceased was at work was in itself dangerous. It could have been rendered so only by the lack of proper tools and implements required to do the work. The car was placed as other cars were, on an elevated track with platforms at the end of the ties on each side and a railing on the outer edges where the workmen, without danger, could safely stand in doing the work. The car in which the gravel was loaded, as others were, was what is called a drop bottom car, with doors on each side that could ordinarily be dropped by the appliances provided by the railway company. The car itself belonged to the railway company and had been inspected before loading and after unloading and was found to be in perfect order by the railway company's inspector; but although thus provided with appliances for the safe release of the doors, the mechanism which could be operated at the end of the cars with safety did not always release the

doors, when the material was wet or frozen, or rust and corrosion interfered with the proper action of the lever, lugs and ratchets installed on the car for the purpose of releasing the doors.

These facts were known to and appreciated by the foreman and superintendent of the defendant company, and it is testified to by the superintendent that on the very day of the accident to the deceased he observed him under the car and warned him to get out from under it, and him and the other laborers then present to be careful. There is conflict in the evidence on this question, however, of a negative character, by the other workmen that they did not see or hear the superintendent give these instructions and did not in fact observe his presence there at that time. The superintendent, named Purple, furthermore testified at a day or two previous to the accident he himself assisted in unloading one or more cars and undertook to instruct the employees present, of whom he says Hammack was one, how to unload cars when for any reason the mechanism controlling the drop doors did not work, and directed them how then to make use of an iron pipe in jarring the doors down, using the pipe always from the opposite side of the car to that on which the doors sought to be released were; and he testified that such a piece of iron pipe was provided and installed on the platform where the workmen were engaged. It is admitted that a hammer was there present, and that Hammack made use of that instrument in releasing the fastenings, and that in doing so he was obliged to get under the car and under these doors, and whereby he brought them down upon himself with the weight of the gravel, injuring him and from which injuries he died. Manifestly the hammer was an unsafe instrument to use for the purpose, which was appreciated by the superintendent, wherefore he says he gave the employees instructions how and when to use the iron pipe in jarring the doors loose. Whether or not such iron pipe was provided—the workmen say they found no such instrument—was a question of fact for the jury. The declaration charges the omission of the defendant to use due care to provide its employees with reasonably safe

tools and appliánces, a common-law and non-assignable duty, and this issue was presented by one or the other, perhaps all of the three last counts of the declaration.   The defendant by its instruction number 6, given over the objection of the plaintiff's counsel, undertook to direct or control the action of the jury, which in substance told the jury that the master is not bound to furnish the safest and best tools, implements and appliances nor provide the best methods of work in which he is engaged in order to save himself from responsibility for injury to his servant.   If the tools, implements and appliances are such that can with reasonable care be used without danger to the employee, it is all that can be required of the employer, and that therefore if the tools, implements and appliances furnished by the defendant to the deceased were such as could with reasonable care have been used by the decedent without danger to himself, then they were instructed that the full duty of the defendant in this regard was performed, and that they should find for the defendant upon this branch of the inquiry.   This instruction did not fairly submit to the jury the question whether such an instrument as the iron pipe, regarded as necessary, had in fact been furnished but practically assumed that one had been supplied as testified by the superintendent but denied by some of the employees.   For the purposes of this case, however, we might say that this instruction was intended to submit the question of fact to the jury, and on that theory say that the jury had found against defendant on that issue, and have properly affirmed the judgment perhaps; but as the judgment is to be reversed for other error we need do no more than call attention to the probable effect of the instruction for the purpose of a new trial.

From what we have said, it is apparent that one of the controlling questions in the case is, did the plaintiff consent and acquiesce in the unlawful employment, precluding recovery for his sole benefit?   As we view the case, this was not a disputed fact.   Another question which we do not regard as a controverted one was whether the defendant fulfilled its common law duty and used due care to provide the deceased

with a reasonably safe place to work.  As we have indicated, we think this duty was substantially complied with for the reasons already given.  The third and last controlling question in the case on the facts as they now appear in the records is whether the defendant used due care to provide the deceased with reasonably safe tools and appliances with which to perform the labor of unloading the cars.  This was a disputed question of fact for the jury.  In *Waldron* v. *Coal Co.*, 89 W. Va. 426, it was held that the question of plaintiff's consent and acquiescence was a doubted and a disputed one for the jury to determine, not for the court.  In this case on the evidence before them the jury evidently determined this important fact against the contentions of the defendant, and but for the error in the plaintiff's instruction number 3, we would be disposed to affirm the judgment.

The judgment will be reversed, the verdict of the jury set aside, and the defendant awarded a new trial.

*Judgment reversed; verdict set aside;*
*new trial awarded.*